**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Hon. Renée M. Bumb |
| v. | Civ. No. 23-cv-8092 |
| JOHN A. DESALVO, | |
| Defendant. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF THE UNITED STATES FOR LEAVE
TO INTERVENE AND FOR A STAY**

---

PHILIP R. SELLINGER
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Memorandum:
ANTHONY P. TORNTORE
Assistant United States Attorney

**PRELIMINARY STATEMENT**

The allegations in this civil enforcement action filed by the United States Securities and Exchange Commission ("SEC") (the "SEC Case") against John A. DeSalvo ("DeSalvo") substantially overlap with an active criminal case filed in this District against DeSalvo that is captioned *United States v. DeSalvo*, 23-mj-11153 (AME) (the "Criminal Case").

The United States of America, through the United States Attorney for the District of New Jersey (the "United States"), moves to (1) intervene in the SEC Case pursuant to Rule 24 of the Federal Rules of Civil Procedure; and (2) stay further proceedings and discovery in the SEC Case in order to preserve the integrity of the prosecution of the Criminal Case, advance the public interest, and prevent DeSalvo from circumventing the narrow confines of criminal discovery through broad civil requests and related litigation.

**STATEMENT OF FACTS/PROCEDURAL HISTORY**

On August 22, 2023, a criminal complaint signed by United States Magistrate Judge André M. Espinosa was unsealed charging DeSalvo with two counts each of wire fraud in violation of 18 U.S.C. § 1343; securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5; and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (the "Criminal Complaint"). *See* 23-mj-11153 (AME), Dkt. 1.

The Criminal Complaint alleges that between on or about January 2021 and May 2022, the Defendant operated two separate investment fraud schemes. The first scheme involved Defendant's creation and promotion of a

cryptocurrency known as "Blazar Token". The second scheme involved Defendant's management of an investment group through an online brokerage (the "Investment Group"). Through both schemes, Defendant is charged with making various misrepresentations to investors and misappropriating investor funds totaling more than $700,000.

On August 23, 2023, Defendant was arrested in connection with the Criminal Complaint. *See* 23-mj-11153, Dkt. 3. Later that afternoon, the Defendant appeared before the Honorable André M. Espinosa for an initial appearance during which the Court set conditions of release. *See* 23-mj-11153, Dkt. 4. Judge Espinosa has signed, on consent from the parties, a continuance which tolls the deadline for indictment under the Speedy Trial Act of 1974 until November 4, 2023. *See* 23-mj-11153, Dkt. 12.

On August 23, 2023, the SEC filed a complaint against DeSalvo in the instant civil case that charges violations of Sections 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Act of 1934, and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 and seeks various civil penalties.

The SEC Complaint arises from the same allegations contained in the Criminal Complaint. Specifically, the SEC Complaint alleges that Defendant perpetrated a securities fraud schemes involving Defendant's promotion of Blazar Token and Defendant's management of the Investment Group. SEC Compl. DeSalvo waived service of a summons and copy of the SEC Complaint

on September 11, 2023. *See* 23-cv-8092, Dkt. 4. To date, DeSalvo has not responded to the SEC Complaint. His answer is due on November 7, 2023.

The Government has consulted with counsel for the SEC who have advised that they do not oppose the Government's motion for a stay. The Government has also consulted with counsel for DeSalvo who also does not oppose the Government's motion for a stay.

For the reasons set forth below, the Court should stay the SEC Case pending disposition of the Criminal Case.

## **ARGUMENT**

### **I. THE UNITED STATES SHOULD BE PERMITTED TO INTERVENE IN THIS ACTION FOR THE LIMITED PURPOSE OF SEEKING A STAY**

The United States seeks to intervene for the limited purpose of staying this matter to protect the integrity of the ongoing prosecution of the Criminal Case. Under the Federal Rules of Civil Procedure, there are two bases for intervention: intervention as of right pursuant to Rule 24(a), or permissive intervention pursuant to Rule 24(b). The United States' intervention in the SEC Case is supported under both grounds.

#### **A. The United States Is Entitled to Intervention as of Right**

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as of right as follows, in pertinent part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

"A potential intervenor must satisfy four criteria to succeed on a motion pursuant to Rule 24(a)(2): '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *United States v. Terr. of the V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (citation omitted)). "Although these requirements are intertwined, each must be met to intervene as of right." *Harris*, 820 F.2d at 596 (citation omitted).

### 1. The United States' Motion for Intervention is Timely

The determination of whether a motion to intervene is timely is "determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 328 (D.N.J. 2004) (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (quotations omitted)). Courts in the Third Circuit weigh three factors in determining timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

Here, the United States' motion to intervene is timely. The SEC Case was initiated on August 23, 2023, and DeSalvo has not filed a responsive pleading. Furthermore, the Court has not yet set deadlines for additional proceedings and

civil discovery has not yet commenced. Given the infancy of this case, the United States' motion to intervene is timely in that it will cause no delay or prejudice to the parties., *See id.* at 370 (finding no prejudice from a four-year delay in filing intervention motion because, while some written discovery and settlement negotiations had occurred prior to the motion, there were no depositions taken, dispositive motions filed, or decrees entered during the four-year period); *see also SEC v. Manor*, No. CV 20-597 (SRC), 2020 WL 3446306, at *2 (D.N.J. June 24, 2020) (finding intervention by the United States to be timely where the SEC civil action was "in its earliest stages").

### 2. The United States Has a Compelling Interest in the SEC Case That is Not Adequately Represented by the Existing Parties, and Which May Be Adversely Affected in the Absence of Intervention

The United States has a substantial interest in the civil litigation that is not sufficiently represented by the existing parties and that may be harmed if the United States is not permitted to intervene. Courts have recognized that "[t]he government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the [parallel] criminal matter." *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (per curiam); *see also S.E.C. v. Ott*, Civ. No. 06-4195 (GEB), 2006 WL 8462454, at *2 (D.N.J. Nov. 29, 2006) (Bongiovanni, U.S.M.J.) (finding that "it [wa]s clear that the United States ha[d] a direct and substantial interest in th[e] [SEC civil] litigation, because the ongoing parallel criminal investigation concern[ed] the same business practices, contracts and payments at issue in

th[e] [civil] matter"); *S.E.C. v. Dubovoy, et al.*, Civ. No. 15-6076 (MCA) (D.N.J. Jan. 29, 2016) (Hammer, U.S.M.J.) (Dkt. No. 240) (granting United States' motion to intervene and stay SEC case based on same securities fraud scheme charged in criminal indictment, even though some of the defendants in the SEC case were not charged in the criminal indictment and opposed the stay request). This interest is present here, because if not stayed, the SEC Case presumably will proceed to the discovery stage and thus enable DeSalvo to extract material from the United States that he would not otherwise be entitled to at this stage in the Criminal Case.

Furthermore, intervention is necessary because only the United States Attorney can effectively represent these interests in the SEC Case. The SEC Case and the parallel Criminal Case involve the same individual defendant, allegedly perpetrating the same fraudulent schemes, involving many of the same alleged victims, while carried out over a similar period of time. However, "the interests of the SEC in enforcing the provisions of the Securities and Exchange Act of 1934, and of Defendants do not represent those of the United States." *Ott*, 2006 WL 8462454, at *3 (citation omitted). The United States' interests concern safeguarding the criminal investigation and prosecution, matters separate and apart from the SEC's interests in protecting the integrity of financial markets. *See Manor*, 2020 WL 3446306, at *2 ("The SEC, though an agency of the federal government, has an interest in protecting the integrity of financial markets. This interest is not only distinct from the Government's interest in the criminal prosecution but also has the potential to conflict with it."). The interests of the

litigants in the SEC Case may be adverse to those of the United States to the extent they seek to discover and publicize matters that are the subject of the ongoing criminal prosecution; intervention by the United States is necessary, therefore, in order to make sure its interests are adequately represented and protected.

Based on the foregoing, the United States should be granted leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a).

### B. Alternatively, the United States Should be Granted Permissive Intervention Because There are Common Questions of Law and Fact in the SEC Case and the Criminal Case

Federal Rule of Civil Procedure 24(b)(1)(B) provides an alternative means for intervention—specifically, permissive intervention—where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." *S.E.C. v. Downe*, Civ. No. 92-4092 (PKL), 1993 WL 22126, *11 (S.D.N.Y. Jan. 26, 1993) (citing *Chestman*, 861 F.2d at 50); *SEC v. One or More Unknown Purchasers of Sec. of Global Indus.*, Civ. No. 11-6500 (RA), 2012 WL 5505738, *2 (S.D.N.Y. Nov. 9, 2012); *Board of Governors of the Federal Reserve Sys. v. Pharaon,* 140 F.R.D. 634, 638 (S.D.N.Y. 1991); *First Merchants Enterprise, Inc. v. Shannon*, No. 88 Civ. 8254 (CSH), 1989 WL 25214 (S.D.N.Y. Mar. 16, 1989). In exercising its discretion, the court must

8

consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the SEC Case and the corresponding criminal prosecution of the same individual defendant arise out of numerous common questions of law and fact related to DeSalvo's alleged involvement in the above-described fraudulent scheme. Moreover, intervention will not cause undue delay or prejudice the parties, particularly since the civil discovery process has not commenced. Accordingly, even if the Court were to find that the United States may not intervene as of right, the Court should exercise its discretion to allow the United States to intervene in this case for the limited purpose of moving for a stay.

II.  **A STAY OF THE SEC CASE IS NECESSARY TO PROTECT THE INTEGRITY OF THE ONGOING CRIMINAL PROSECUTION**

    A.  **The Court Has the Authority to Issue a Stay**

The United States seeks to intervene for the limited, and authorized, purpose of staying this matter. Courts have the inherent authority to stay proceedings in a civil case in the interests of justice when a parallel criminal prosecution is underway. *See RAD Services, Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271, 279 n.3 (3d Cir. 1986); *SEC v. HealthSouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003). It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings." *United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872-873 (3d Cir. 1976) (quoting *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967)).

Factors that courts have considered in weighing whether a stay is warranted include: the extent to which the criminal and civil cases overlap; the interests of the public in the pending civil and criminal litigation; the potential prejudice to the civil parties of delaying their litigation; the interests of the court; and the status of the criminal case. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995); *Walsh Sec. v. Cristo Prop. Mgmt.*, 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998); *HealthSouth*, 261 F. Supp. 2d at 1326. These factors support a stay in this case.

### B. The Criminal and Civil Matters Overlap

There is substantial overlap between the Criminal Case and the SEC Case. As noted, they involve the same individual defendant, DeSalvo, and the same fraud scheme. As a result, many of the potential witnesses in the Criminal Case also are potential witnesses in the SEC Case.

### C. The Public Interest Favors a Stay

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962). As one court has observed, "where both civil and criminal proceedings arise out of the same or related transactions, the government is ordinarily entitled to a stay of all discovery in the civil action until disposition of the criminal matter." *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966); *see also S.E.C. v. Shkreli*, 15-CV-7175, 2016 WL 1122029, *7 (E.D.N.Y. March

10

22, 2016) (granting government's motion to stay SEC case over the defendant's objection and noting, "the public's interest in the effective enforcement of the criminal law is the paramount public concern."); *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1072 (C.D. Cal 2008) ("The criminal case is of primary importance to the public, the Defendants, and the Court"; the public's interest "is best served by resolving the criminal case in the most expeditious manner possible.").

A stay of discovery in this matter also is in the public's interest because it will prevent the defendant from utilizing the expansive civil discovery rules to obtain discovery that he otherwise would not be entitled to under the narrow rules of criminal discovery.  As the Third Circuit explained in *Mellon Bank*, a civil litigant should not be permitted to proceed simultaneously with an overlapping criminal matter, because "the similarity of the issues [leaves] open the possibility that [the defendant] might improperly exploit civil discovery for the advancement of his criminal case."  545 F.2d at 873.  The possibility of improper use of discovery, in part, led the court in *Mellon Bank* to stay discovery.  *Id.* at 874.  The concern expressed in *Mellon Bank* that criminal discovery limitations not be circumvented has been echoed by many courts that have stayed civil discovery in parallel proceedings.

> For example, in *Campbell*, the Fifth Circuit stated:
>
> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the

11

> other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed – unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

307 F.2d at 487 (internal citation omitted).

Courts around the country, including in this District, have relied on similar logic to stay civil discovery while criminal proceedings are ongoing. *See Ott*, 2006 WL 8462454 at *1-4; *Dubovoy*, Civ. No. 15-6076 (D.N.J.) (Dkt. No. 240); *Downe*, 1993 WL 22126, at *12–14; *In re Ivan F. Boesky Securities Litigation*, 128 F.R.D. 47, 49-50 (S.D.N.Y. 1989); *United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 657-59 (D.R.I. 1987); *Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 380-81 (D.D.C. 1977); *SEC v. Control Metals Corp.*, 57 F.R.D. 56, 57-58 (S.D.N.Y. 1972).

Notwithstanding the concern that litigants will exploit the liberal civil discovery rules to their advantage, the United States does not have to demonstrate that any particular defendant already has unfairly taken advantage of the civil discovery provisions to the detriment of the United States or the public. Rather, it is presumed that criminal defendants and targets will make full use of such an unsurpassed opportunity to harm the Government's criminal cases. *See Integrated Generics, Inc. v. Bowen*, 678 F. Supp. 1004, 1009 (E.D.N.Y. 1988) (no need to find wrongful intent). Courts have recognized the unfair advantages inherent in civil discovery opportunities and have, accordingly, stayed discovery. *See, e.g., Control Metals Corp.*, 57 F.R.D. at 57 (staying depositions of four grand jury witnesses).

Here, given the overlap of witnesses and issues between the SEC Case and the Criminal Case, interrogatories and deposition notices in the SEC Case could undermine or otherwise hinder the criminal prosecution. *Campbell*, 307 F.2d at 487 n.12. Even if the defendants here "possessed the purest of motives," allowing civil discovery to go forward would make them "the beneficiar[ies] of materials otherwise unavailable to [the]m under the criminal rules . . . thus nullifying in effect the criminal discovery limitations." *In re Eisenberg*, 654 F.2d 1107, 1113-14 (5th Cir. 1981).

> D. **The Public's Interest in Allowing the Criminal Case to Be Completed Without Interference Outweighs the Minimal Prejudice to the Defendant From a Stay**

The public's significant interest in allowing the Criminal Case to run its course must be balanced against a civil litigant's interest in a final resolution of its case. All litigants, of course, have an interest in the swift resolution of their claims and defenses. The United States is mindful that neither the Court, the SEC, nor the Defendant wants this case to be delayed unnecessarily.

Nonetheless, disposing of the SEC Case expeditiously does not outweigh the importance of conducting an unimpeded criminal prosecution. This is especially true where a stay until the completion of any trial in the Criminal Case will cause little to no particularized harm to the public, the SEC, or to the Defendant, and even could benefit the Defendant in light of the potential Fifth Amendment implications involved in proceeding with the SEC Case. *See Ironbridge Corp. v. C.I.R.*, 528 F. App'x 43, 46 (2d Cir. 2013) (unpublished and non-precedential) ("We also presume that parallel civil and criminal proceedings

13

can sometimes burden the exercise of the Fifth Amendment privilege against self-incrimination."); *S.E.C. v. McGinnis*, No. 14-CV-6, 2016 WL 591764, *3 (D. Vt. Feb. 12, 2016) ("Defendants additionally point out that proceeding in the instant case may compromise their Fifth Amendment rights to the extent not already waived ...."); *S.E.C. v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998) ("Often the [stay application filed by the criminal enforcement agency] is joined by the defendant as well, who otherwise confronts the prospect of expensive dual litigation and the dilemma either of having to testify in a pre-trial deposition or, by invoking the privilege against self-incrimination, subjecting himself to a permissible adverse inference in the civil case.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

### E. A Stay Would Likely Narrow the Issues in the SEC Case

Finally, a stay also would benefit the public interest by potentially narrowing (or eliminating) the issues to be decided in the SEC Case. *See In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); *Texaco Inc.*, 383 F.2d at 609 (affirming decision to stay civil action because, among other things, "the trial of the criminal case [might] reduce the scope of discovery in the civil action . . . [a]nd . . . perhaps might also simplify the issues"); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues.").

For example, if the Criminal Case results in a guilty verdict against DeSalvo, the higher burden of proof in the criminal matter likely will mean that the jury's findings will have preclusive effect in the SEC Case. Likewise, if the Criminal Case results in a guilty plea by DeSalvo, DeSalvo's admissions will undoubtedly narrow, and perhaps eliminate, the issues to be decided against him in the SEC Case. In either case, there would likely be little left to litigate civilly after a successful criminal prosecution.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant it leave to intervene in the SEC Case and order a stay of the SEC Case until the conclusion of the Criminal Case.

Respectfully submitted,
Philip R. Sellinger
United States Attorney

By:   /s/ Anthony P. Torntore
ANTHONY P. TORNTORE
Assistant United States Attorney

Dated:   Newark, New Jersey
October 11, 2023